HARTZ, Circuit Judge.
Defendant Marvin Iverson was convicted after a jury trial of engaging in a scheme to defraud JPMorgan Chase ánd Big Horn Federal Savings. See 18 U.S.C. § 1344. The statute requires that the victims be “financial institutions.” Id. To establish that element of the offense, tjhe government offered the testimony of an FBI agent to try to prove that JPMorgan and Big Horn were insured by the Federal Deposit Insurance Corporation (FDIC). See id. § 20(1) (defining financial institution to include “an insured depository institution (as defined in [12 U.S.C. § 1813(c)(2)])”); 12 U.S.C. § 1813(c)(2) (“The term ‘insured depository institution’ means any bank or savings association the deposits of which are insured by the [FDIC] pursuant to this chapter.”).
On. appeal Defendant argues that the agent’s testimony was. inadmissible hearsay and violated the best-evidence rule. He also argues that even if the evidence was admissible, it was insufficient to prove that JPMorgan and Big Horn had FDIC insurance at the time of the offense. Despite the government’s concession to the contrary, we hold that the agent’s testimony was not inadmissible hearsay; it was either not hearsay or fell within a hearsay exception. As for the best-evidence rule, Defendant' did not raise the issue below and he has not shown plain error. Finally, because there was sufficient evidence that JPMorgan - had FDIC insurance at the time of the offense, we reject Defendant’s sufficiency-of-'the-evidence challenge.
I. BACKGROUND
Defendant has been a member of the “sovereign citizens” group called “Wyoming Free State.” Among other practices, such groups instruct' their members on various debt-elimination schemes. The scheme here was called the electronic-funds-transfers (EFT) scheme. A member writes a check on a closed account to pay off a debt, with the hope, that an unaware financial institution will release title or a lien before the check bounces.
Defendant used the EFT scheme to try to eliminate debts owed to JPMorgan and *1018 Big Horn. First, on June 22, 2012, using a closed checking account with First Interstate Bank, Defendant wrote Big Horn two checks totaling over $27,000 to pay off a vehicle loan and a mortgage. On the back of each check was written:
Not for deposit EFT ONLY For discharge of debt Marvin Leslie Iverson Authorized representative Without Recourse
R., Vol. 2 at 28 (internal quotation marks omitted). Despite this notation, the checks were processed by Big Horn, and the vehicle lien and mortgage were released. After being notified that the checks were drawn on a closed account, the bank demanded that Defendant pay the debt. Defendant refused until he was arrested for this offense. Second, on August 18, 2012, Defendant wrote a check from his closed First Interstate account to JPMorgan in the amount of $369,300 to pay off his daughter’s mortgage. The check had the same EFT notation as before. JPMorgan did not process the check or release the mortgage.
Defendant was charged with scheming to defraud the financial institutions in a one-count indictment filed in the United States District Court for the District of Wyoming. The case went to trial on July 28, 2014. Defendant represented himself with the aid of standby counsel.
Defendant’s issues on appeal focus on the prosecutor’s afterthought questioning of FBI Special Agent Kent Smith:
[PROSECUTOR]: I don’t have any oth- • er questions. Thank you.
[DEFENDANT]: No questions.
THE COURT: You may step down.
[PROSECUTOR]: Your Honor, I neglected to ask one question.
THE COURT: Very well.
Q. Agent, did you do any research to determine whether or not JPMorgan Chase and Black — or Big Horn Federal Savings were FDIC insured or federally insured institutions?
A. Yes, and both First Interstate — you said Big Horn? ,
Q. Big Horn.
A. Yes, Big Horn Federal Savings is. I received the F—
[DEFENDANT]: Objection. Foundation.
THE COURT: Sustained.
Q. What research did you do?
A. Different for different banks. On JPMorgan Chase I pulled up the FDIC website and found their information and their certificate number. For Big Horn Federal Savings Bank, having been to that actual bank, I requested a copy of their FDIC certificate which included their number.
Q. All right. I ask again. Can you— when you, when you looked at the website—
[DEFENDANT]: Objection.
[Standby Defense Counsel]: Hearsay.
Q. —is that a normal course of business to check to see if a bank is FDIC insured—
[DEFENDANT]: Hearsay.
Q. —in your normal course of business as an FBI agent?
A. To determine if they’re FDIC insured?
Q. Yes.
A. Yes, it is.
Q. And do you rely on those records to be accurate to determine if a bank is FDIC insured?
A. Yes, we do.
*1019 Q. And I’d ask again. Do you know if the banks of Big Horn Federal Savings and—
[DEFENDANT]: Objection.
Q. —JPMorgan Chase are federally insured?
[DEFENDANT]: Hearsay again.
THE COURT: Overruled.
A. Yes, in my research both Big Horn Federal Savings Bank and JPMorgan Chase bank are federally insured.
R., Vol. 3 at 84-86.
II. DISCUSSION
A. Admissibility of the Evidence
Defendant raises two challenges to the admissibility of the testimony that the victim institutions were FDIC insured. He claims (1) that Agent Smith’s testimony about FDIC insurance coverage was hearsay and (2) the testimony violated the best-evidence rule, which required introduction into evidence of the FDIC certificates of coverage. Both the hearsay rule and the best-evidence rule are exceptions to the general rule that a witness can testify to what the witness saw or heard. The hearsay rule ordinarily excludes testimony about what someone wrote or said out of court when “offer[ed] in evidence to prove the truth of the matter asserted in the statement.” Fed.R.Evid. 801(c). And the best-evidence rule ordinarily excludes testimony about what appeared in a document when offered to prove “its content.” Fed. R.Evid. 1002.
We review a district court’s eviden-tiary decisions for abuse of discretion. See United States v. Trujillo, 136 F.3d 1388, 1395 (10th Cir.1998). The government confesses error on Defendant’s hearsay issues, but we are not bound by this concession. See United States v. Resendi?-Patino, 420 F.3d 1177, 1182-83 (10th Cir.2005). We first address hearsay and then the best-evidence rule.
1. Hearsay
Agent Smith’s testimony about Big Horn’s FDIC-insured status was based solely upon his review of the bank’s FDIC certificate. In essence he was reporting on what the certificate said. His testimony about JPMorgan was based on his review of the FDIC website. There are two possible assertions in this testimony. One is Agent Smith’s assertion that he is accurately reporting what he saw concerning the certificate and the website. The other is what the certificate and website said was true — that the banks were insured by the FDIC. The first assertion presents no hearsay problem because the assertion is made by the witness at trial. See Fed. R.Evid. 801(c)(1) (hearsay is limited to “a statement that ... the declarant does not make while testifying at the current trial or. hearing”). Agent Smith could be carefully cross-examined about the accuracy of his perception and memory of what he saw. .(The probability of witness error in reporting the content of a document is, however, a concern of the best-evidence rule, which we address in the next section.) [1] Thus, the only hearsay issues are whether the statements in the certificate and on the website were hearsay; and if so, did they come within an exception to *1020 the hearsay rule. We begin with the Big Horn testimony.
a. Big Horn’s FDIC Certificate
Although this circuit has not yet considered a hearsay challenge to the admission into evidence of the content of an FDIC insurance certificate, several of our sister circuits have. Each has rejected the hearsay objection, albeit for differing reasons. The First Circuit affirmed the admission of an FDIC certificate to prove insurance coverage under Fed.R.Evid. 803(6), the business-records exception. See United States v. Albert, 773 F.2d 386, 388-89 (1st Cir.1985), The Sixth Circuit has likewise held that an FDIC certificate qualifies as a business record, see United States v. Riley, 435 F.2d 725, 726 (6th Cir.1970), but it also has held one admissible as a public record under Fed.R.Evid. 803(8), see United States v. Arthur, 822 F.2d 60, at *3 (6th Cir.1987) (unpublished). And the Ninth Circuit has held that the certificate is not hearsay because it is a “verbal act.” See United States v. Bellucci, 995 F.2d 157, 160-61 (9th Cir.1993). The parties have not cited nor have we found any case holding that FDIC certificates are inadmissible hearsay. For the following reasons, we reject Defendant’s contention that they are.
The Ninth Circuit may well be correct that the assertion of insurance coverage in an FDIC certificate is not hearsay. The rule against heársay does not apply to “verbal acts ... in which the. statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.” Fed.R.Evid. 801 advisory committee’s note to 1972 proposed rules, subdivision (c) (internal quotation marks omitted); see id. (“If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.”). The issue is whether evidence that the statement was made is in-itself relevant to a material issue in the case. For example, the statement may be the predicate for a defamation claim; -.if so, the statement is not being offered for its truth (it is actionable because it is false) and is not hearsay. Or a promise to do something may be offered into evidence to prove the existence of a contract even if the promisor was insincere in making the promise. The promise is not offered into evidence to prove the “truth” of the promisor’s statement. The promise itself has independent legal significance, so there is no hearsay issue. Cf. Creaghe v. Iowa Home Mut. Cas. Co., 323 F.2d 981, 984 (10th Cir.1963) (“The hearsay rule does not exclude relevant testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement. The presence or absence of such words and statements of themselves are part of the issues in the case.”). In both circumstances, the evidence of the statement is not being used to prove the truth of some assertion but “merely to show that it was actually made.” 5 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 801.11[3] (Mark S. Brodin ed., 2d ed.2015). Apparently on that basis the Ninth Circuit wrote, “Like a written contract that memorializes the fact of a legal agreement,.the [FDIC] certificate memorializes the fact of the legal relationship of insurer and insured.” Bellueci, 995 F.2d at 161. If the certificate has independent legal significance — say, a bank’s deposits are insured if and only if the certificate is issued (regardless of whether the premium was paid or the coverage was approved by the , proper official) — then we could comfortably conclude that the statement of coverage on the certificate is not hearsay. The statement would hot be evidence of coverage; it would be what effectuates coverage.
*1021 But we need not resolve the legal effect of the certificate itself and whether its content has independent legal significance. ■ Even if the FDIC certificate is merely evidence of — -that is, an assertion of — coverage, it easily qualifies as a public record under Fed.R.Evid. 803(8), because it officially reports that the FPIC has initiated coverage. See Arthur, 822 F.2d 60 at *3. Under the Rule 803(8) exception to the hearsay rule, “[a] record or statement of a public office,” is admissible if “it sets out ... the office’s activities ... and ... the opponent does not show that the source of information - or other circum-r stances indicate a lack of trustworthiness.” There is no question that the certificate, is a record or statement of the FDIC or that the FDIC is a public office. And the certificate clearly sets out the FDIC’s action — providing insurance to depositors of the .institution named in the certificate. The certificate therefore satisfies Rule 803(8). See Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 542 (4th Cir.2007) (county tax assessment, offered to prove home value, was properly admitted under Rule 803(8)); Standard Havens Prods., Inc. v. Gencor Indus., Inc., 953 F.2d 1360, 1366, 1371-72 (Fed.Cir.1991) (certificate of correction issued by United States Patent & Trademark Office admissible under Rule 803(8)); United States v. Kuzmenko, No. 2:13-cr-00062 JAM, 2014. WL 1334003, at *3 (ED.CaLApril 3, 2014) (driver’s license). Foundation testimony is usually unnecessary for admissibility under Rule 803(8). See 5 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 803.10[2] (Mark S. Brodin ed., 2d ed. 2015) (“Since the assurances- of accuracy are generally greater for public records than for regular business records, the proponent is usually not required to establish their admissibility through foundation testimony.”), '
b. The FDIC Website
Agent Smith’s testimony regarding JPMorgan’s insurance status was based solely on his review’ of the FDIC website. He testified that he looked up JPMorgan on the website, “found their information and their certificate number,” and determined that it “[is] federally insured,” R., Vol. 3 at 85, What the website reports amounts to an assertion that JPMorgan has an FDIC. certificate with a: particular certificate number and that the insurance remains active. The government was.attempting to prove the truth of that assertion. .There is no argument that .the web.site. itself affects an institution’s legal rights (as perhaps may be true of a Certificate), so we agree[1] .with Defendant that Agent Smith’s testimony offered the website content for its truth and was hearsay.
Again, however, the public-records exception applies. The website information is “a record or. statement of [the FDIC].” Fed.R.Evid.’ 803(8), And the website reports which banks are insured by the FDIC, thereby “setfting] out ... the office’s activities” related to deposit insurance. . Id. Several courts have ruled that government websites fall within the exception for public records. See, e.g., Williams v. Long, 585 F.Supp.2d 679, 689-91 (D.Md.2008) (judicial record of pending lawsuits against defendant); Chapmany. S.F. Newspaper Agency, No. C 01-02305 CRB, 20Q2 WL 31119944, at *2 (N.D.Cal. Sept. 20, 2002) (printout of delivery confirmation from United States Postal Service “Track & Confirm” webpage); EEOC v. E.I., DuPont de Nemours & Co., No. CIV.A. 03-1605, 2004 WL-2347559, at *1 (E.D.La. Oct. 18, 2004) (“table of information compiled by the United States Census Bureau” printed from Census Bureau website). Government records, statements, and reports are continually being-placed on the-internet to allow easy access to-the *1022 general public. Their electronic format does not, by itself, prevent them from qualifying as public records. See Fed. R.'Evid. 101(b)(6) (“a reference to any kind of written material or any other medium includes electronically stored information”); Fed.R.Evid, 101(d) (the term original includes electronically stored information in any form “readable by sight”). And courts have considered the FDIC website so reliable that they have taken judicial notice of information on it. See, e.g., Laborers’ Pension Fund v. Blackfnore Sewer Const, Inc., 298 F.3d 600, 607 (7th Cir.2002) (bank is branch office of another bank); FAS Capital, LLC v. Carr, 7 F.Supp.3d 1259, 1267 (N.D.Ga.2014) (FDIC was receiver of closed bank); Curdo v. Wachovia Mortg. Corp., No. 09-CV-1498-IEG (NLS), 2009 WL 3320499, at *4 (S.D.Cal. Oct. 14, 2009) (bank was regulated by Office of Thrift Supervision on date of transaction). We hold that because Agent Smith’s testimony about the FDIC certificates was either not hearsay or fell within the public-records exception and because his testimony about the FDIC website fell within the public-records exception, the district court did not abuse its discretion in overruling- Defendant’s hearsay objections.
We recognize that the government did not argue that Agent Smith’s testimony about FDIC insurance coverage was admissible under the Rule 803(8) exception to the hearsay rule. But we see no unfairness to Defendant in affirming the district court’s decision to overrule Defendant’s hearsay objection on that ground. The legal- issue is clear. And it is not dependent on any disputable factual foundation. (The dissent objects that Agent Smith did not'bring to court the documents he reported about — the Big Horn FDIC certificate and, apparently, a printout from -the FDIC website content on JPMorgan. But Defendant did not object to Smith’s testimony on that ground. And the trial court could properly credit his testimony about what he saw. Further, we can take judicial notice of the facts necessary to establish the foundation for the admission of the testimony. See Fed.R.Evid. 104(a) (preliminary questions of admissibility of evidence are decided by court).)
Therefore, our rejection of the hearsay argument comes within our general rule that we may affirm on an unpre-served ground if doing so is fair to appellant. See United States v. Harrison, 296 F.3d 994, 1001 (10th Cir.2002). We cannot express the point better than Judge Brorby did in Hernandez v. Starbuck, 69 F.3d 1089, 1093-94 (10th Cir.1995):
[The Appellant’s] argument misconceives the roles played by the appellant, the appellee, and the court of appeals when a district court judgment - is appealed. - While the appellant challenges the district court’s ruling, the appellee is only interested in maintaining the status quo, ie., an affirmance. Because the appellant comes to the court of appeals as the challenger, he bears the burden of demonstrating the alleged error and the precise relief sought. A court of appeals is not required to manufacture an appellant’s argument on appeal when it has failed in its burden to draw our attention to the error below.- In the event of such a failure, the court will ordinarily consider the appellant’s point waived. -Appellees bear no such burden. Though Fed.R.App.P. 28(b) requires the appellee’s brief to contain arguments.addressing the issues raised by the appellant, we have never characterized the appellee’s obligation in terms of a categorical imperative. The distinction between appellant’s and appellees’ obligations under Rule 28 grows out of the ..court of appeals’ freedom-to affirm a .district court .decision on any grounds for which there is a record sufficient to *1023 permit conclusions of law, even grounds not relied upon by the district court. This broad power to affirm extends beyond the counter-arguments raised by the appellee; it includes any ground for which there is record to support conclusions of law. Once the appellant alleges the district court erred, we have a duty to assess the validity of the appellant’s allegations. This duty arises in part out of our relationship with the district court, and ive may not neglect it simply because an appellee fails to defend adequately the district court’s decision. To do so would open the door to a perverse jurisprudence by which properly decided district court decisions could be reversed.
(brackets, citations, footnote, and internal quotation marks omitted) (emphasis added). We also repeat his caution to appel-lees: “We admonish appellees not to take our language as a license not to address appellant’s arguments. The appellee’s brief plays a vital function in informing the court of the weaknesses in the appellant’s arguments. By failing to address a ground for relief raised by the appellant, the appellee greatly increases the chances the court of appeals will be persuaded by the appellant’s position.” Id. at 1094 n. 3.
2. Best-Evidence Rule
Defendant also challenges the introduction of Agent Smith’s testimony as a violation of the best-evidence rule. Because Defendant failed to raise this objection in the district court, we review only for plain error. See United States v. Frost, 684 F.3d 963, 971 (10th Cir.2012). We will grant relief under the plain-error standard only if (1) the district court committed an error, (2) the error is clear at the time of the appeal, (3) the error “affects substantial rights,” and (4) the error “seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Id. (internal quotation marks omitted). An error is clear “when it is contrary to well-settled law.” United States v. Whitney, 229 F.3d 1296, 1309 (10th Cir.2000), It affects substantial rights only “when it is prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.”, United States v. Algarate-Valencia, 550 F.3d 1238, 1242 (10th Cir.2008) (internal quotation marks omitted).
Fed.R.Evid. 1002’ provides that “[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.” See Allen v. W.H.O. Alfalfa Milling Co., 272 F.2d 98, 99 (10th Cir.1959) (“[Cjourts exclude testimony when the knowledge from which the witness testifies is derived from the writing.”). Defendant argues that Agent Smith’s testimony plainly violated this rule because “[t]he original writings at issue here are the FDIC certificates,” and there-foré “[substituting Agent Smith’s testimony for the actual certificates” was not permissible absent an exception to the best-evidence rule. Aplt. Br. at 15.
We need not decide if the testimony violated the best-evidence rule, because even if there was error, it was not clear. The best-evidence rule does not apply to testimony relating to the existence of a document, as opposed to its contents. See Fed.R.Evid. 1002 (an original is.required “to prove its content” (emphasis added)). For example, in United States v. Beebe, 467 F.2d 222, 225 10th Cir.1972), we held that the best-evidence rule did not prevent witnesses from testifying “that their bush nesses were ‘licensed dealers’ in firearms rather than producing documents evidencing their actual licensing.” We noted that because the government “was not attempting to establish the terms of [the licenses,] ,■ no useful reason would have been *1024 served by their production.” Id. After all, the purpose of the best-evidence rule is to protect against error in reporting details about a document. As one treatise puts it: “The Best Evidence doctrine also does not apply to evidence of written transactions where the purpose’Is to prove simply the ‘bottom line,’ meaning' the net effect or overall nature of the transaction, or the fact that such a transaction occurred, with*out reference to details or specifics.”- 5 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 10:19 at 717-19 (4th ed.2013).
At least.one circuit has applied this reasoning to testimony about FDIC-insured status. In United States v. Sliker, 751 F.2d 477, 483. (2d Cir.1984), the Second Circuit affirmed the admission of testimony “that the.bank’s deposits ‘are’ FDIC insured” against the objection “that the best evidence rule required the Government to produce a certified, copy of the insurance policy itself.” The court ruled that the evidence should not be excluded under Fed.R.Evid. 1002 because “the proof required was proof of the fact of insurance and not of the contents of a writing.” Sliker, 751 F.2d at 483. This decision also raises doubt that the best-evidence" rule required exclusion of Agent Smith’s testimony.
Because the admission of similar testimony has been affirmed against a best-evidence-rule objection in our sister circuit and'follows our precedent in an analogous context, we cannot say any error is clear. See United States v. Teague, 443 F.3d 1310, 1319 (10th Cir.2006) (“If neither the Supreme Court nor the Tenth Circuit has ruled on the subject, we cannot find plain error if the authority in'other circuits is split.”); United States v. Ruiz-Gea, 340 F.3d 1181, 1187 (10th Cir.2003) (“In general, -for an error to be contrary to well-settled law, either- the Supreme Court or this court must have addressed the issue.”); United States v. Rickett, 535 F. App’x 668, 677 (10th Cir.2013) (“[T]o render an alleged error ‘clear’ or ‘obvious,’ Mr. Rickett needs controlling Supreme Court or Tenth Circuit precedent, or a hefty weight "of controlling authority from other circüits’.” (emphasis omitted)). We therefore reject Defendant’s best-evidence-rule argument., '
B. Sufficiency of the Evidencé
Even though Agent Smith’s testimony was admissible, we must still decide whether the evidence was. sufficient to sustain the jury’s verdict that JPMorgan and Big-Horn were FDIC insured when Defendant committed the charged acts. Viewing the evidence in the light most favorable to the government, United States v. Cooper, 375 F.3d 1041, 1044 (10th Cir.2004), we hold that the evidence was sufficient to find that JPMorgan was FDIC insured on the relevant date. Because that is,enough to sustain the conviction, we affirm.
At the outset we note that a bank’s status as an FDIC-insured institution on the date of the crime is an element of federal bank fraud that must be proved to the jury beyond a reasonable doubt. See United States v. Rackley, 986 F.2d 1357, 1360-61 (10th Cir.1993) (“In order to convict the defendant of bank fraud under 18 U.S.C. § 1344, the government was required to prove ... that the-financial institution was then insured by the [FDIC].”). Despite the importance of this element, this case is just one of many in which the government has treated proof of FDIC-insured status as an afterthought. We continue to be “troubled by the government’s casual treatment of this element.” United States v. Bindley, 157 F.3d 1235, 1239 (10th Cir.1998). Proof is not difficult. The FDIC could not make it easier. Its website states that it can “assist prosecutors who need to prove’ an institution’s *1025 insured status under a criminal statute by providing a ‘proof of insured status.” FDIC, Instructions for Requesting Confirmation that an Institution was FDIC-insured on the Date of an Offense (July 2, 2011), https://www.fdic.gov/bank/individual/ failed/ProofofFDICInsuredStatus.html (last visited Nov. 13, 2015). All a prosecutor need do is send a fax to the number provided and the FDIC will provide a statement of coverage at the relevant time. See id.; Ex. 1 at 2.[2]
To be sure, the evidence in this case was not as strong as the. website procedure would have yielded. But viewed in the light most favorable to the government, it was sufficient. Regarding JPMorgan, Agent Smith testified that “in [his] research ... JPMorgan Chase bank [is] federally insured.” R., Vol. 3 at 86. He described that research as “pullfing] up the FDIC website and [finding] their information and their certificate number.” Id. at 85.[3] He said that checking the FDIC website to determine whether.a bank,.is FDIC insured is part of his “normal course of business as an FBI. agent.” Id. at 86. From this testimony a jury could reasonably infer that when Agent Smith accessed the FDIC website, he read entries showing that JPMorgan was insured by the FDIC on that date. And . if the date that Smith checked the website was sufficiently close to the time of Defendant’s offense, the jury could also reasonably infer that the bank was insured at the time of Defendant’s offense; See Sliker, 751 F.2d at 484-85 (noting “the principle that the subsequent existence of a condition is some evidence of its prior existence, at least when the time span is not too great and' there is no suggestion of an intervening circumstance that might call its previous existence into question,” and holding that testimony that bank “is” FDIC insured (at time of trial) permitted jury to' infer that bknk was- insured at time of crime (more than three years' earlier, see id. at 480, 496)). Compare United States v. Ware, 416 F.3d 1118, 1122 (9th Cir.2005) (less than six-month delay between crime and trial allows jury to infer “the existence of past "insurance coverage from testimony of present insurance coverage”), with United States v. Ali, 266 F.3d 1242, 1244 (9th Cir.2001) (no inference of FDIC coverage could be drawn based on testimony “solely in the present tense at trial, well over two years after the time of the alleged offense”).'
In this case the jury could draw a reasonable inference that Agent Smith checked the FDIC website within á few months of the offense. Defendant’s offense agairfst JPMorgan occurred in August 2012. Smith investigated the matter and arrested Defendant in October, al *1026 though only on the charge of defrauding Big Horn. A superseding indictment handed down in March 2013 included' the charge of defrauding JPMorgan, which was described as a “federally insured financial institutionf ],” R., Vol. 1 at 66. (It appears that the jury was given a date-stamped copy of the indictment.) A jury could infer that Agent Smith conducted his research on JPMorgan’s FDIC insurance before that indictment issued, about seven months after the offense. In our view, that time lapse is sufficiently short that the jury could infer FDIC insurance coverage in the summer of 2012. See United States v. Brunson, 907 F.2d 117, 119 (10th Cir.1990) (relying in part on documentary evidence showing federal insurance coverage seven months after the crime as-circumstantial evidence of insurance on the date of the crime).
Moreover, our examination of the trial exhibits reveals two mortgage-loan statements — dated July 30, 2012, and August 31, 2012 — which both include the notation “JPMorgan Chase Bank, N.A. Member FDIC.” United States v. Iverson, No, 12-CR-245-j, Trial Ex. 500 at 9-10, 13-14 (D.Wyo.2012). These documents, admitted without objection as business records of the bank, are strong corroboration that JPMorgan was FDIC insured both immediately before and immediately after the offense occurred. See United States v. Pascarella, 84 F.3d 61, 71 (2d Cir.1996) (finding sufficient evidence of bank’s FDIC insurance in part based on Defendant’s “bank statements staffing] that the bank was so insured”). In all, we are satisfied that the evidence regarding JPMorgan’s FDIC status was sufficient to support a jury finding that JPMorgan was FDIC insured on the date of the offense.
Because there was sufficient evidence that JPMorgan was FDIC insured on the date of the offense, we need not address Defendant’s argument that there was insufficient evidence of Big Horn’s coverage. Defendant’s offense, a violation of 18 U.S.C. § 1344, requires defrauding only one financial institution, not two. We recognize that the indictment charged Defendant with defrauding both institutions. But indictments typically charge alternative means of committing an offense in the conjunctive. Doing so establishes that the grand jury found that the defendant probably committed the offense via all the alternative means. See United States v. Daily, 921 F.2d 994, 1001 (10th Cir.1990) (“fl]t is generally accepted procedure to use ‘and’ in an indictment where a statute uses the word ‘or.! This assures that defendants are not convicted on information not considered by the grand jury.”), overruled on other grounds by United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). This leaves to the petit jury to determine whether the government can prove any of the means. The jury instructions at trial typically describe the means of committing the offense in the alternative and allow the jury to convict if it finds any of the means beyond a reasonable doubt. See United States v. Earls, 42 F.3d 1321, 1327 (10th Cir.1994) (“fl]t is entirely proper for the district court to instruct the jury in the disjunctive, though the indictment is worded in the conjunctive.” (internal quotation marks omitted)); United States v. Gunter, 546 F.2d 861, 868-69 (10th Cir.1976) (“It is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.”). If after conviction it is determined that there was insufficient evidence of guilt with respect to one of the alternative means, we presume that the jury did not base its verdict on that means and we will affirm if there was sufficient evidence of any of the other means. See Griffin v. United States, 502 U.S. 46, 56, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (“Petitioner cites no ease, and we are aware of *1027 none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional ... nor even illegal ..., but merely unsupported by sufficient evidence.”); United States v. Ayon Corrales, 608 F.3d 654, 657 (10th Cir.2010) (“[W]hen there is sufficient evidence to • support a conviction on one theory of guilt on which the jury was properly instructed, we will not reverse the conviction on the ground that there was insufficient evidence to convict on an alternative ground on which the jury was instructed”).
On occasion, as here, the jury instructions unnecessarily set forth the means of committing the offense in the conjunctive (just as in the indictment), stating that the jury must find that the defendant committed the offense through all the alleged means.[4] In that circumstance we have previously adopted what we have called the law of the case regarding unobjectedto elements instructions in criminal prosecutions. We have held that each charged element, even if unnecessary, must • be proved, and reversal is required if there is insufficient evidence of any element. See, e.g., United States v. Romero, 136 F.3d 1268, 1273 (10th Cir.1998); United States v. Cronic, 900 F.2d 1511, 1515 n. 3 (10th Cir.1990); United States v. Killip, 819 F.2d 1542, 1547-48 (10th Cir.1987); United States v. Biglow, 554 Fed.Appx. 679, 683-84 (10th Cir.2014). But those holdings have now been overruled by the Supreme Court’s opinion in Musacchio v. United States, — U.S. -, 136 S.CC 709, 193 L.Ed.2d 639 (2016), which held that “when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction,” id. at 715. The Court said that the law-of-the-case ■ doctrine is- inapplicable in this context, explaining that “the doctrine is something of a misnomer when used to describe how an appellate court assesses a lower court’s rulings.” Id. at 716 (internal quotation marks omitted). The doctrine “generally provides that when a court decides upon a rule’of law, that decision should continue to govern the samé issues in subsequent stages in the same ease..'.. [But an] appellate court’s function is to revisit matters decided in the trial court.” Id. (internal quotation marks omitted).[5]
*1028 In short, the government adequately proved the offense charged in the indictment.
Ill, CONCLUSION
We AFFIRM the judgment below.

. The dissent argues that the essential hearsay problem at trial was the prosecution’s failure to bring the certificate (or printout of the FDIC website) to the.courtroom. But if that is a hearsay problem, rather than a best-evidence problem, what would happen if a fire destroyed the certificate or a power failure obliterated the website? Un.der the best-evidence rule, a witness could then testify about the contents of the lost records. See Fed. R.Evid. 1004(a). Would the dissent nevertheless bar the testimony as hearsay? (The dissent agrees that Defendant has forfeited the best-evidence argument.)

. There may even be easier ways to proven bank’s FDIC-insured status using the FDIC website. Given how simple the FDIC hás made it for a prosecutor to prove coverage, we do not expect to see another case like this in this circuit. If we cannot rely on the assistant TJnited States attorneys with their law degrees to obtain this evidence, perhaps we can at least rely on the FBI to deposit it in the prosecutor’s lap.

. The FDIC website provides a “BankFind” tool by which anyone can research the FDIC status of an . individual bank. See FDIC, BankFind, https://research.fdic.gov/bankfind/ (last visited Feb. 5, 2016). This tool permits searching for FDIC-insured banking institutions by bank name, FDIC number, or location. See id. Once a bank is selected, the website provides various information about the bank, including FDIC status (active or inactive), FDIC certificate number, when the bank was established, and when it was first insured. See FDIC, BankFind: JPMorgan Chase Bank, National Association (FDIC #: 628), https://research.fdic.gov/bankfind/detail. html?bank= 628&name=JPMorgan% 20Chase%-20Bank,% 20National% 20Associa-tion (last visited Feb. 5, 2015). Links are also available that display the bank’s, locations, history, and financial data. See id.

. The jury was instructed that it must find that Defendant schemed to defraud "Big Horn Federal Savings Bank and JPMorgan Chase Bank” and .that "Big Horn Federal Savings Bank and .JPMorgan Chase Bank were insured by the [FDIC.].” R., Vol. 1 at 115 (emphasis added). Jury Instruction No. 18 told the jury:
To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
First: the defendant, Marvin Iverson, knowingly executed a scheme or artifice to obtain money or property from Big Horn Federal Savings Bank and JPMorgan Chase Bank by means of false or fraudulent pretenses, representations, or promises;
Second; Big Horn Federal Savings Bank and JPMorgan Chase Bank are financial institutions within the meaning of the law; in this case, that means the government must prove that Big Horn Federal Savings Bank and JPMorgan Chase Bank were insured by the Federal Deposit Insurance Corporation;
. Third: the false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning they would naturally tend to influence, or were capable of influencing the decision of the Big Horn Federal Savings Bank and the JPMorgan Chase Bank.
Id. at 115.

. The Court noted, however, that ",[w]hen an appellate court reviews a matter on which a party failed to object below, its review may well be constrained by other doctrines such as *1028 waiver, forfeiture, and estoppel, as well as by the type of challenge that it is ¿valuating.” Id. But no such considerations appear to have any purchase here. There is no hint that Defendant relied on the prosecution’s having to prove its case with respect to both JPMor-gan and Bighorn,

. https://research.fdic.gov/banlcfind (last visited Feb. 25, 2016).