FILED
United States Court of Appeals
Tenth Circuit

August 22, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MILLARD RAY LASKEY,

    Defendant - Appellant.

No. 22-5115
(D.C. No. 4:22-CR-00186-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**\*
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

A jury convicted Defendant Millard Ray Laskey of assault with a dangerous weapon with intent to do bodily harm in Indian country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(3).  On appeal, Defendant argues that the government presented insufficient evidence to prove a jurisdictional element of the offense—that his victim was an Indian.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

\* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

During an argument, Defendant assaulted his stepson, Nathan Clements, with a machete, causing substantial harm, including the loss of Mr. Clements's right eye. The government charged Defendant with assault resulting in serious injury in Indian country (Count One), assault with a dangerous weapon with intent to do bodily harm in Indian country (Count Two), and maiming in Indian country (Count Three). The indictment alleged jurisdiction over all three offenses under the General Crimes Act, 18 U.S.C. § 1152, because (1) the crime occurred in Indian country and (2) Mr. Clements is an Indian, even though Defendant is not.[1] Thus, to convict, the government had to prove beyond a reasonable doubt that Mr. Clements has "some Indian blood" and that he "is recognized as an Indian by a tribe or by the federal government," *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) (internal quotation marks omitted).

---

[1] Section 1152 is also referred to as the "'Indian Country Crimes Act'" and the "'Federal Enclaves Act of 1834.'" *United States v. Prentiss*, 206 F.3d 960, 966 n.3 (10th Cir. 2000). It "limits jurisdiction to 'inter-sovereign' crimes between [an] Indian and a non-Indian." *Id.* at 966 n.4. The statute provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

Mr. Clements's mother, Regina Laskey, testified at trial that (1) she is an Indian; (2) she is a member of the Cherokee tribe; (3) she receives tribal benefits; (4) Mr. Clements is an Indian; (5) he has a tribal enrollment or roll number; (6) she personally ensured he was enrolled in the tribe; and (7) he has some quantum of Indian blood, although she could not recall how much. On cross-examination, defense counsel asked Mrs. Laskey if she had testified that Mr. Clements is "a registered member of the Cherokee Nation" and if it was her "understanding that he does have a blood quantum." R., Vol. III at 180–81. Mrs. Laskey answered "Yes" to both questions. *Id.* Counsel asked, "But Mr. Clements has never participated in traditional ceremonies?" *Id.* at 181. Mrs. Laskey answered, "No." *Id.* Defense counsel's final question regarding whether Mr. Clements was an Indian was: "Never received medical services at an Indian health hospital—health clinic, hospital?" *Id.* Mrs. Laskey answered: "He may have when he was with my mother. My mother had guardianship of my kids for a while when their father died." *Id.*

Mr. Clements testified that he is a member of the Cherokee tribe, had received services from an Indian hospital when he was a child, and had recently received a $2,000 stimulus from the Cherokee Nation. Defendant did not cross-examine Mr. Clements about this testimony.

The jury found Defendant guilty on Count Two and not guilty on the other counts. This appeal followed.

3

## II.  DISCUSSION

"We examine challenges to the sufficiency of the evidence de novo, viewing all evidence and drawing all reasonable inferences in the light most favorable to the government."  *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003).  "We limit our inquiry to determining whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "In reviewing the evidence, we do not weigh conflicting evidence or consider witness credibility, as these duties are delegated exclusively to the jury."  *Id.*  However, there must be more than "a mere modicum" of evidence.  *Jackson*, 443 U.S. at 320 (internal quotation marks omitted).  "The evidence must be substantial, raising more than a mere suspicion of guilt."  *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (internal quotation marks omitted).

In this case, the government had the burden to show that Mr. Clements is an Indian beyond a reasonable doubt.  *See Diaz*, 679 F.3d at 1187.  We employ "a two-part evidentiary test to determine whether a person is an Indian for the purposes of federal law."  *Id.*  "To find that a person is an Indian the [jury] must first make factual findings that the person has some Indian blood and, second, that the person is recognized as an Indian by a tribe or by the federal government."  *Id.* (internal quotation marks omitted).  In applying this test, we take "a totality-of-the[-]evidence approach to determining Indian status," and "[a] person satisfies the definition only if both parts are met."  *Id.*  Because "tribal membership in some tribes is possible for

4

individuals who are not Indians," tribal membership alone does not make a person

"an Indian for purposes of federal jurisdiction unless he had Indian ancestors." *Id.*

at 1188. There must also be "a showing of some Indian blood." *Id.* at 1187 (internal

quotation marks omitted).

## A.    Indian blood

Defendant argues that the testimonial evidence concerning whether

Mr. Clements has some Indian blood was insufficient because it failed to identify the

specific quantum of Indian blood he possesses. In support, Defendant points to cases

discussing the specific quantum of Indian blood that either the defendant or the

victim possessed. But in none of those cases did the court *require* evidence of a

specific quantum of Indian blood.[2]

---

[2] *See United States v. Nowlin*, 555 F. App'x 820, 823 (10th Cir. 2014) (reciting that Nowlin is "a tribal descendent with 31/128 Indian blood" but observing that satisfaction of the first prong of the Indian-status test was "not disputed"); *Diaz*, 679 F.3d at 1187 (noting that "[e]vidence a person has an Indian tribal certificate that includes the degree of Indian blood" and "membership in a tribe that will not accept members without a certain degree of consanguinity" are some approved ways of satisfying the first prong); *United States v. Zepeda*, 792 F.3d 1103, 1115 (9th Cir. 2015) (en banc) (counting an "Enrollment Certificate stat[ing] that Zepeda had one-half Indian blood" among the evidence satisfying the first prong); *United States v. Maggi*, 598 F.3d 1073, 1081 (9th Cir. 2010) (noting that Maggi had "1/64 Blackfoot blood" but declining to "resolve . . . whether there is a baseline quantum of Indian blood required because Maggi does not meet [the] second prong of tribal or government recognition"), *overruled on other grounds by Zepeda*, 792 F.3d at 1106; *United States v. Lossiah*, 537 F.2d 1250, 1251 (4th Cir. 1976) (concluding that tribal certificate, introduced by the government "without objection" and showing Lossiah "possesse[d] three-fourths degree of Eastern Cherokee blood . . . was adequate proof that [he] was a Cherokee Indian").

Defendant also takes issue with the government's failure to offer any documentary evidence that Mr. Clements has some Indian blood. But Defendant has pointed to no cases (nor have we found any) requiring documentation of Indian blood. In any event, we conclude that documentation that Mr. Clements has some Indian blood was unnecessary in this case.

We have held in another context that testimony alone can be sufficient to satisfy the government's burden of proof on an element of a criminal offense even where, as here, the element could be satisfied with documentary evidence. In *United States v. Bindley*, 157 F.3d 1235, 1239 (10th Cir. 1998), we concluded that testimony alone sufficed to prove beyond a reasonable doubt that a bank was federally insured—an element of the charged offense—even though other evidence, such as a certificate of insurance, might have "more clearly prove[n] this element." In reaching that conclusion, "we emphasize[d]" that the defendant "did not object to th[e] evidence, did not cross-examine the witness about it, and did not offer any contrary evidence of his own." *Id.* (internal quotation marks omitted). In another case involving the same issue, we concluded that testimony alone that a bank was federally insured was sufficient even though documentary proof was "not difficult" to obtain. *United States v. Iverson*, 818 F.3d 1015, 1024–25 (10th Cir. 2016).

The principles espoused in *Bindley* and *Iverson* apply equally here. Accordingly, testimony alone *can* establish that a victim or a defendant is an Indian. At the first prong of the Indian-status test, therefore, we must consider whether

6

Mrs. Laskey's testimony alone *is sufficient* to prove beyond a reasonable doubt that Mr. Clements possesses some Indian blood.

Mrs. Laskey testified that Mr. Clements has some quantum of Indian blood. A rational juror could find that Mrs. Laskey had personal knowledge of that fact because she is Mr. Clements's mother. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). And a rational juror could credit this testimony, which was undisputed, and find beyond a reasonable doubt that Mr. Clements has some Indian blood. This evidence is more than a mere modicum, *see Jackson*, 443 U.S. at 320, and raises more than a mere suspicion that Mr. Clements has some Indian blood, *see Rufai*, 732 F.3d at 1188.

The fact that Mrs. Laskey is Mr. Clements's mother distinguishes this case from one upon which Defendant relies, *United States v. Ortner*, No. 21-5075, 2023 WL 382932 (10th Cir. Jan. 25, 2023) (unpublished). In *Ortner*, we concluded that the "unsubstantiated opinion testimony" of the defendant's "childhood friend" that the defendant had "Indian blood according to records that were passed down" was "insufficient evidence to demonstrate [the defendant] possessed some quantum of Indian blood." *Id.* at *3 (brackets and internal quotation marks omitted). Unlike the witness in *Ortner*, Mrs. Laskey is Mr. Clements's mother, not merely his

7

"childhood friend," and her testimony involved personal knowledge of biological facts, not an "unsubstantiated opinion" based on "records that were passed down."[3]

## B.    Tribal or governmental recognition

On the second prong of the Indian-status test, the district court instructed the jury that it had to determine if Mr. Clements was "recognized as an Indian by a federally recognized tribe or by the federal government." R., Vol. I at 369. To make that determination, the court instructed the jury that it could consider the following "non-exclusive factors": (1) "enrollment in a tribe"; (2) "government recognition formally and informally through providing the person assistance reserved only to Indians"; (3) "enjoying benefits of tribal affiliation"; and (4) "social recognition as an Indian through living on a reservation and participating in Indian social life." *Id.* The court further instructed the jury that "only the first factor is dispositive, meaning that, if the person is an enrolled tribal member of a federally recognized tribe, you must find that the person is recognized as an Indian." *Id.*[4] Finally, the court instructed the jury that "the Cherokee Nation" is a "federally recognized Indian tribe[.]" *Id.*

---

[3] Our disposition of the Indian-blood prong renders it unnecessary to address the parties' arguments about whether Mrs. Laskey was clearly identified as an Indian. *See United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005) ("[E]vidence of a parent . . . who is clearly identified as an Indian is generally sufficient to satisfy [the Indian-blood] prong.").

[4] These instructions apparently were gleaned from *Nowlin*, 555 F. App'x at 823. *See* R., Vol. I at 271 (proposed instruction citing *Nowlin* as authority).

8

As to the first factor recited above, Defendant contends that testimony from Mrs. Laskey and Mr. Clements that Mr. Clements was an enrolled member of the Cherokee tribe was, by itself, insufficient to prove tribal membership.  In support of this argument, he provides a quote from *United States v. Keys*, 642 F. Supp. 3d 1294, 1303 (E.D. Okla. 2022):  "Testimony that a defendant is not a member of a particular [tribe[5]] is insufficient to prove non-Indian status."[6]  *Keys*, however, is distinguishable because there, the government had to prove a negative—that the defendant was *not* an Indian.  Testimony that the defendant was not a member of a particular tribe— or even of any tribe—would necessarily be insufficient to show that the defendant was not an Indian because, despite not being a member of a tribe, the defendant could have Indian blood and could satisfy the second prong of the Indian-status test through the other factors (two through four) mentioned above.  In contrast here, the government had to prove a positive—that Mr. Clements is enrolled in a tribe.  The uncontested testimony from both Mrs. Laskey and Mr. Clements that he was enrolled in the Cherokee tribe is enough to allow a rational juror to find beyond a reasonable doubt that he was in fact enrolled in the tribe.

---

[5] *Keys* uses the word "pueblo" here instead of "tribe," but for our purposes, we may equate the two terms.  *Cf., e.g.*, 25 U.S.C. § 5130 ("For purposes of this title . . . [t]he term 'Indian tribe' means any Indian or Alaska Native *tribe*, band, nation, *pueblo*, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe." (Emphasis added)).

[6] Mr. Laskey misattributes this quote to a later decision in the same case denying a post-judgment motion.  *See* Aplt. Opening Br. at 21 (citing *United States v. Keys*, No. 21-CR-332, 2023 WL 1860989, at *6 (E.D. Okla. Feb. 9, 2023) (unpublished)).

Defendant finds it "troubling" that the government did not admit a certificate of tribal membership or present a Cherokee tribe employee who could testify that Mr. Clements was a member of the tribe. Aplt. Opening Br. at 21–22. But he points to no authority requiring documentary proof of tribal membership or testimony from a tribal representative. While such evidence might have been stronger, it does not mean that the testimony of Mrs. Laskey and Mr. Clements was insufficient. *See Bindley*, 157 F.3d at 1239; *Iverson*, 818 F.3d at 1024–25.

Because there was sufficient evidence that Mr. Clements was enrolled in a tribe, and that factor is dispositive of the second prong of the Indian-status test, we need not reach Defendant's arguments regarding the other second-prong factors.

### III.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Joel M. Carson III
Circuit Judge