**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CASEY JAMES NOWLIN,

Defendant-Appellant.

No. 13-8028
(D.C. No. 2:12-CR-00116-NDF-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **McKAY**, and **BACHARACH**, Circuit Judges.

The Major Crimes Act, 18 U.S.C. § 1153, provides federal criminal

jurisdiction over Indians who commit certain offenses in Indian Country.  *See United*

*States v. Antelope*, 430 U.S. 641, 642 (1977).  Mr. Casey James Nowlin was

convicted under this law on one count of assault resulting in serious bodily injury in

Indian Country, *see* 18 U.S.C. §§ 2, 113(a)(6) and 1153, and four counts of assault

---

[*]    The parties have not requested oral argument, and we grant their request to decide the appeal based on the briefs.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

This order and judgment does not constitute binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

with a dangerous weapon with intent to do bodily harm in Indian Country, *see id.* §§ 2, 113(3) and 1153. On appeal, Nowlin challenges his status as an Indian and contests the admissibility of certain evidence. We affirm.

## I. <u>Violence at the Wind River Indian Reservation</u>

Early on April 22, 2012, Nowlin and Lorenzo Roman arrived at a bonfire party at the Wind River Indian Reservation. The gathering included Tylis Teran, Michael Smith, Brandon Gould, Brent Gould, and Darlynn Seminole.

At the party, Lorenzo Roman and Tylis Teran began to argue. What followed, according to the prosecution's evidence, was a violent rampage by Nowlin. As Roman and Teran argued, Nowlin struck Teran in the back of the head with a stick. Michael Smith and Brandon Gould tried to intervene, but Nowlin struck them on the head. Nowlin also attacked Brent Gould and Darlynn Seminole.

Teran and Smith were later treated at a local hospital for head lacerations and released. Seminole sustained contusions on her legs. Brent Gould was treated for a broken arm, but x-rays revealed no fracture. And Brandon Gould suffered a fractured skull, intracranial bleeding, and permanent loss of vision in one eye.

## II. <u>Nowlin's Appellate Arguments</u>

Nowlin appeals his conviction on three grounds: (1) the evidence was insufficient to establish Indian status; (2) the district court erred in presenting a statement to the jury (through judicial notice) stating that Nowlin had admitted Indian

status; and (3) the district court erred in admitting evidence of certain statements. We reject each argument.

## III. Indian Status – Sufficiency of the Evidence

Nowlin first contends there was insufficient evidence to prove his status as an Indian. This contention is rejected.

"We review the record for sufficiency of the evidence de novo to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in the light most favorable to the government." *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) (internal quotation marks omitted).

Under the Major Crimes Act, 18 U.S.C. § 1153, the prosecution must prove to the jury that the defendant is an Indian. *United States v. Stymiest*, 581 F.3d 759, 763 (8th Cir. 2009). The term "Indian" is not defined by the statute; thus, we use a two-pronged test, asking whether "the defendant (1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." *United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001) (internal quotation marks omitted); *see id.* at 1280 n.2 (recognizing that the two-part test applies to prosecutions under 18 U.S.C. §§ 1152 and 1153).[1]

---

[1] This test implicitly requires federal recognition of the defendant's tribe. *See United States v. Maggi*, 598 F.3d 1073, 1078 (9th Cir. 2010). The record interchangeably refers to Nowlin's tribe as the Eastern Shoshone and the Shoshone, though only the latter is listed as a federally recognized tribe. *See* Dep't of Interior

(continued)

- 3 -

The first prong is met when the defendant's "parent, grandparent, or great-grandparent . . . is clearly identified as an Indian." *United States v. Maggi*, 598 F.3d 1073, 1077 (9th Cir. 2010). In evaluating the second prong, courts have developed a list of factors that juries consider in ascertaining whether a defendant is recognized as an Indian by a tribe or the federal government. These factors include: "'1) enrollment in a tribe; 2) government recognition formally and informally through providing the person assistance reserved only to Indians; 3) enjoying benefits of tribal affiliation; and 4) social recognition as an Indian through living on a reservation and participating in Indian social life.'" *Stymiest*, 581 F.3d at 763 (quoting *St. Cloud v. United States*, 702 F. Supp. 1456, 1461 (D.S.D. 1988)). These factors are not exclusive and only the first factor is dispositive if the defendant is an enrolled tribe member. *Id.* at 764.

The first prong of our test is not disputed. Nowlin concedes he has "some degree of Indian blood," Aplt. Br. at 11, as confirmed by George Shongutsie, the Eastern Shoshone Tribal Enrollment Director. And Shongutsie testified that: (1) Nowlin's mother, maternal grandparents, and maternal great-grandmother were enrolled members of the tribe, and (2) Nowlin is a tribal descendent with 31/128 Indian blood.

Notice, Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 75 Fed. Reg. 60810-01, 60812, 2010 WL 3811385 (Oct. 1, 2010). Nevertheless, we have observed that the Eastern Shoshone is federally recognized, *see N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1275 (10th Cir. 2012), and Nowlin does not argue otherwise.

The second prong requires tribal or federal recognition.  Though Nowlin is not an enrolled member; the government presented evidence that:

- Nowlin enjoyed access to free healthcare from the Indian Health Service,

- Nowlin obtained three fishing permits that were available only to Indians, and

- Nowlin was socially recognized as an Indian through participation in powwows, bearing children with an enrolled tribe member, and holding himself out as an Indian.

In addition, the district court took judicial notice of facts indicating that Nowlin had previously conceded his status as an Indian.  As the court told the jury:

> You may accept this fact as true, but you are not required to do so.  The Court hereby takes judicial notice of the fact that the defendant, Casey James Nowlin, has, with counsel before a Court, previously admitted under oath and under penalty that he is an Indian person.  He stated under oath that he is not enrolled with an Indian tribe, but that he is a member of the Shoshone Tribe.  The defendant also stated under oath that he has lived on the Wind River Indian Reservation all his life and attended Indian schools on the reservation.  The defendant further stated that he submitted himself to the jurisdiction of the Shoshone and Arapahoe Tribal Court.  Lastly, he stated that he has received treatment through the Indian Health Services in the past.

R., Vol. 3 at 1155-56.

The evidence, combined with Nowlin's prior concession of Indian status, was sufficient regarding both prongs of the test.  Thus, we reject Nowlin's challenge to the sufficiency of the evidence.

## IV.    Admissibility of Judicially Noticed Facts

Nowlin also challenges the district court's decision to present the jury with the judicially noticed statement, which stated that he had previously conceded his Indian status.  It is not clear whether Nowlin is basing the challenge on unfair prejudice (under Fed. R. Evid. 403) or characterization as evidence of prior bad acts (under Fed. R. Evid. 404(b)).  Either way, the district court did not err in presenting.

In considering Nowlin's evidentiary challenges, we address only whether the district court abused its discretion.  *See United States v. McGlothin*, 705 F.3d 1254, 1260 (10th Cir.) ("This court generally reviews for abuse of discretion a decision to admit evidence under Rules 403 and 404(b)."), *cert. denied*, 133 S. Ct. 2406 (2013).

Under Rule 403, evidence should be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  In applying this rule, the court could reasonably attribute great probative value to Nowlin's prior statements.  As noted above, the second prong of Indian status encompassed tribal assistance to the defendant and social recognition as an Indian.  And in his prior statements, Nowlin admitted that he was an Indian person and a member of the Shoshone Tribe.

Perhaps the evidence was "prejudicial" in the sense that virtually all probative evidence is "prejudicial."  *See United States v. Archuleta*, 737 F.3d 1287, 1293 (10th Cir. 2013) ("Virtually all relevant evidence is prejudicial to one side or the other.").  But the issue for the district judge was whether that prejudice was "unfair."

*See id.* The district court had discretion to conclude that the prejudice would not have been unfair.

As presented to the jury, Nowlin's judicial admission referred only to his prior admission that he had admitted Indian status. This admission was made in a criminal proceeding, but this fact was not disclosed to the jury.

Nowlin suggests the jury would have guessed that the admission took place in a criminal proceeding. For this suggestion, Nowlin points to two features of the statement: (1) his admission that he is an "Indian person," and (2) his submission to tribal court. Based on these features of the statement, Nowlin speculates that the jury would have assumed the existence of prior criminal charges. Aplt. Opening Br. at 25. But the district judge could reasonably regard this danger as speculative because: (1) she sanitized the statement of anything that suggested a prior criminal proceeding; and (2) Nowlin could easily have admitted Indian status and submitted to tribal court jurisdiction for a civil proceeding in tribal court (rather than a criminal proceeding).

Nowlin's evidentiary argument would also fail under Rule 404(b). The purpose of this rule "is to prevent the use of prior bad acts to prove a defendant has a propensity to commit acts of that sort." *McGlothin*, 705 F.3d at 1265. Under this rule, evidence of prior crimes, wrongs, or other acts is not admissible to prove a person's character and action in conformity therewith, but is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(b)(1)-(2). This "list of proper

purposes is illustrative, not exhaustive, and Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (internal quotation marks omitted). To be admissible, evidence falling within Rule 404(b) must satisfy a four-part test:

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*McGlothin*, 705 F.3d at 1262 (internal quotation marks omitted).

The district court recognized that the judicially noticed statement was being used only to establish Nowlin's identity as an Indian. The statement was relevant for this purpose, and the court determined its probative value was not substantially outweighed by the danger that jurors might speculate that Nowlin had been involved in a criminal proceeding. Under these circumstances, the district court did not abuse its discretion in admitting the statement.

## V.    **Admissibility of Nowlin's Statements**

Finally, Nowlin contends the district court erred in admitting evidence of statements he had made following the assaults. Prior to his arrest, Nowlin went to the home of Billy Noon to speak to Noon's roommate. According to Noon, Nowlin was "acting like he done something and he was wanting to know what it was going to

be like to go to prison." R., Vol. 3 at 863.  After 15 to 30 minutes, Noon told Nowlin to leave, but he refused, so someone pushed him out of the house and called the police.

Later, Nowlin was taken into federal custody by Lt. Michael Shockley.  As Nowlin was placed in the patrol car, he asked why he was being arrested. Lt. Shockley replied:  "You almost killed that guy last night, Casey." *Id.* at 893. Nowlin asked:  "Why do you give a fuck about those guys?  They jump people all the time and you guys don't do shit." *Id.*

Once inside the patrol car, Nowlin leaned forward and asked Lt. Shockley: "So who is it that turned me in?" *Id.* at 894.  Lt. Shockley said he could not answer, and Nowlin replied:  "Oh, it doesn't matter.  I'll find out in my papers anyway." *Id.* But then Nowlin asked:  "Was those people drunk?" *Id.* at 895.  Lt. Shockley said he did not know, and Nowlin responded:  "I wasn't even there.  I was at my sister's house." *Id.*  Lt. Shockley told him that "several people" had identified him, upon which Nowlin leaned back and said:  "Don't nobody know me." *Id.* at 896. Lt. Shockley replied:  "I know you and everybody described you to me." *Id.*  Nowlin retorted:  "You guys ain't got shit.  I was at my mom's house." *Id.*  Lt. Shockley laughed at the contradiction and said:  "You just said you were at your sister's." *Id.* Nowlin then became upset and asked Lt. Shockley why he was "making things personal." *Id.* at 897.

On the eve of trial, Nowlin moved to exclude these statements, arguing they constituted evidence of other bad acts under Fed. R. Evid. 404(b). The following day, Nowlin argued the statements should also be excluded as unfairly prejudicial under Fed. R. Evid. 403. The government responded that the statements constituted admissions of a party opponent, admissible under Fed. R. Evid. 801(d)(2)(A) to show Nowlin's guilty mind. The district court agreed with the government and allowed use of the statements. Nowlin argues that the district court should have excluded: (1) Noon's testimony suggesting that he caused a disturbance for which someone contacted the police, and (2) Lt. Shockley's testimony portraying Nowlin in a poor light. We reject these contentions.

The court did not err under Rule 403.

First, Nowlin complains of unfair prejudice from Noon's statement that someone contacted the police, but the court could reasonably conclude that any unfair prejudice would not have substantially outweighed the probative value.

In addition, Nowlin complains that Lt. Shockley's testimony portrayed him as "drunken and belligerent," Aplt. Opening Br. at 33; but nothing suggests that the prejudice was unfair or that it substantially outweighed the probative value.

The evidentiary argument would also fail under Rule 404(b). "'Other bad acts' means acts that are not part of the events giving rise to the present charges. But acts intrinsic to or intertwined with the charged acts are not Rule 404(b) acts." *United States v. Gorman*, 312 F.3d 1159, 1162 (10th Cir. 2002) (citation omitted).

With this definition, the district court could reasonably conclude that Nowlin's statements did not involve "other bad acts." One example is Nowlin's statement that he wanted to know what jail would be like. The district court could reasonably conclude that this statement reflected Nowlin's involvement in the assaults being charged, rather than uncharged misconduct.

There was also evidence of Nowlin's references to the victims, insinuations that the government lacked evidence, and inconsistencies in Nowlin's alibis. These statements were central to the underlying charges and bore no relation to other bad acts. The district court could reasonably conclude that these statements did not involve Rule 404(b) evidence, and the evidentiary rulings did not constitute an abuse of discretion.

## VI.    **Disposition**

The judgment of the district court is affirmed.

Entered for the Court

Robert E. Bacharach
Circuit Judge