**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 18, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DENNIS HEBERT,

    Defendant - Appellant.

No. 24-7030

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:22-CR-00106-RAW-1)**
_____

Jared T. Guemmer, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, and Whitney R. Mauldin, Assistant Federal Public Defender, with him on the briefs), Office of the Federal Public Defender for the Northern District of Oklahoma, Tulsa, Oklahoma, appearing for Appellant.

Linda A. Epperley, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the brief), Office of the United States Attorney for the Eastern District of Oklahoma, Muskogee, Oklahoma, appearing for Appellee.
_____

Before **HARTZ**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

A jury convicted Dennis Hebert of aggravated sexual abuse in Indian country. Under 18 U.S.C. § 1152, the prosecution needed to prove that Mr. Hebert was not an Indian. Mr. Hebert contends the evidence on this element was insufficient. We agree. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the conviction and remand.

## I.  BACKGROUND

### A.  *Legal Background*

Under the General Crimes Act, "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States . . . shall extend to the Indian country." 18 U.S.C. § 1152. This statute does not extend, however, to "offenses committed by one Indian against . . . another Indian," *id.*, nor to offenses committed by a non-Indian against another non-Indian, *United States v. McBratney*, 104 U.S. 621, 623-24 (1881). Section 1152 therefore applies only if the defendant was a non-Indian and the victim was an Indian, or vice versa. *United States v. Walker*, 85 F.4th 973, 979 (10th Cir. 2023).

We have held that "'the Indian/non-Indian statuses of the victim and the defendant are essential elements of [a] crime' under Section 1152 that the government must prove beyond a reasonable doubt." *Id.* (quoting *United States v. Prentiss* (*Prentiss I*),[1] 256 F.3d

---

[1] This court has issued three opinions under the caption "*United States v. Prentiss*": 206 F.3d 960 (10th Cir. 2000); 256 F.3d 971 (10th Cir. 2001) (en banc) (per curiam); and 273 F.3d 1277 (10th Cir. 2001). We cite only the 2001 opinions here and employ the shorthand "*Prentiss I*" for the 256 F.3d 971 en banc decision and "*Prentiss II*" for the later 273 F.3d 1277 panel opinion.

971, 980 (10th Cir. 2001) (en banc) (per curiam)).  Because the victim in this case was an

Indian, the prosecution was required to prove Mr. Hebert was a non-Indian.[2]

To be an Indian under § 1152, a person must (1) have "some Indian blood" and

(2) be "recognized as an Indian by a tribe or by the federal government."  *United States v.*

*Prentiss* (*Prentiss II*), 273 F.3d 1277, 1280 (10th Cir. 2001) (quotations omitted).  "A

person satisfies the definition only if both parts are met; conversely the government can

prove that a person is not Indian by showing that he fails either prong."  *United States v.*

*Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012).

A person has "some Indian blood" if he has "Indian ancestors."  *Id.*; *see*

*United States v. Reza-Ramos*, 816 F.3d 1110, 1121 (9th Cir. 2016) (explaining that the

"some Indian blood" test "requires ancestry living in America before the Europeans

arrived" (quotations omitted)).  "[E]vidence of a parent, grandparent, or

great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy

---

[2] In 18 U.S.C. § 1153, the Major Crimes Act makes certain crimes committed by an Indian in Indian country federal offenses, including "a felony under Chapter 109A [of title 18]," which includes aggravated sexual abuse.  *See* 18 U.S.C. § 2241(c).  Mr. Hebert thus could be guilty of a federal offense regardless of whether he is an Indian (§ 1153) or a non-Indian (§ 1152).  But the Government charged him with violating § 1152.

We have held that a § 1152 defendant's Indian status is an essential element that the government must prove, including when the crime is enumerated in § 1153.  *See Prentiss I*, 256 F.3d at 977-78, 978 n.5; *see also United States v. Simpkins*, 90 F.4th 1312, 1314, 1317-18 (10th Cir. 2024) (reversing a § 1152 conviction for insufficient evidence that the defendant was a non-Indian in a felony prosecution under Chapter 109A).

this prong." *United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005); *see*

*United States v. Nowlin*, 555 F. App'x 820, 823 (10th Cir. 2014) (unpublished).[3]

To determine whether a tribe or the federal government recognizes someone as an

Indian, courts have identified several nonexclusive factors, including (1) enrollment in a

tribe, (2) provision of government assistance reserved only for Indians, (3) enjoying the

benefits of tribal affiliation, and (4) social recognition as an Indian through living on a

reservation and participating in Indian social life. *Nowlin*, 555 F. App'x at 823 (citing

*United States v. Stymiest*, 581 F.3d 759, 763 (8th Cir. 2009)). Enrollment in a federally

recognized tribe is sufficient, *Walker*, 85 F.4th at 983, but "is not the only way an

individual can show she is an Indian under 18 U.S.C. § 1152." *United States v. Drewry*,

365 F.3d 957, 961 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1103 (2005),

*reinstated*, 133 F. App'x 543 (10th Cir. 2005); *see also United States v. Antelope*,

430 U.S. 641, 646 n.7 (1977) (noting that "enrollment in an official tribe has not been

held to be an absolute requirement for federal jurisdiction").[4]

---

[3] We cite unpublished opinions for their persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[4] This court recently held in a § 1153 case that "when proving a defendant's Indian status, the government can only satisfy the second prong of the *Prentiss II* test by proving beyond a reasonable doubt that the defendant was recognized as an Indian *at the time of the charged offense*." *United States v. Hatley*, 153 F.4th 1112, 1123 (10th Cir. 2025) (emphasis added). Although the rationale for this holding may also apply to proof of Indian status in a § 1152 prosecution, we need not decide that question here because we hold the evidence was insufficient to show that Mr. Hebert was a non-Indian at any time.

In *Diaz*, for example, a § 1152 prosecution against an Indian, the victim's father testified that he had researched his and his wife's family history going back several hundred years and determined they were both "Hispanic Jews" or "Sephardic Jews" and had no Indian ancestry. 679 F.3d at 1187-88. He also testified his son never enrolled in any tribe nor associated with any tribe other than his casino job. *Id.* at 1188. We held this evidence was sufficient to find the son was a non-Indian. *Id.*

### B. *Factual History*

After Mr. Hebert argued with his wife in Texas, his stepdaughter, Kara Byers, invited him to live with her on the Choctaw Nation reservation in Oklahoma in a house she occupied with another woman and several young children. Within two days of Mr. Hebert's moving in, he sexually assaulted a six-year-old boy inside the home.

### C. *Procedural History*

**1. Indictment**

The indictment charged Mr. Hebert with one count of aggravated sexual abuse in Indian country, in violation of 18 U.S.C. §§ 1151, 1152, 2241(c), and 2246(2)(A). ROA, Vol. I at 113. The superseding indictment alleged the victim was an Indian and Mr. Hebert was a non-Indian. *Id.* The case proceeded to trial.

**2. Trial Evidence**

To prove that Mr. Hebert was a non-Indian, the Government relied on four witnesses and two exhibits. Mr. Hebert presented no evidence.

5

*a. Kara Byers*

Mr. Hebert is married to Ms. Byers's "biological mother." ROA, Vol. III at 133. Ms. Byers had never lived with Mr. Hebert before he moved into the house where he committed his offense. *Id.* at 130-31. She had known him "a very long time," and the two talked "regularly" around the time Mr. Hebert moved in. *Id.* at 133, 179. Mr. Hebert had "helped [her] out" with bills and her kids "pretty much since [she] was an adult." *Id.* at 135. Ms. Byers's oldest child was 12 years old at the time of trial. *Id.* at 129. On Mr. Hebert's Indian status, the prosecution elicited the following testimony:

> **Q:** Just from being the defendant's stepdaughter, I just want to ask you, if you know, is he a member of any Indian Tribe?
>
> **A:** Not that I know of, no.
>
> **Q:** Did he ever mention to you being an Indian?
>
> **A:** No, never.
>
> **Q:** Do you know what race or races he self-identified as?
>
> **A:** One time, I think, part Mexican.

*Id.* at 131.

*b. Investigator Dakota Grantham*

Dakota Grantham, an investigator with the Choctaw Nation Tribal Police, interviewed Mr. Hebert on the day of the offense. *Id.* at 227-29. Before questioning Mr. Hebert, Investigator Grantham read him his *Miranda* rights. Mr. Hebert signed a waiver of his right to an attorney. *Id.* at 252.

On direct examination, Investigator Grantham testified that (1) he did not recall if he asked Mr. Hebert whether he was a member of any Indian tribe and (2) when he asked about race, Mr. Hebert said he was "Latino, Hispanic." *Id.* at 258-59.

On cross examination, Investigator Grantham testified that (1) a person can be both Hispanic and Native American, (2) he believed (but was not sure) that he called the five major Indian tribes in Oklahoma to inquire about Mr. Hebert's tribal membership, and (3) he did not obtain any written documentation as to Mr. Hebert's tribal status. *Id.* at 266-67.

On redirect examination, Investigator Grantham testified:

> **Q:** And regardless of whether you asked the defendant whether he was Indian or Native American, did the defendant ever volunteer that he was Indian or Native American?
>
> **A:** No, sir.

*Id.* at 274.

### c. Agent Chad Sensor

Chad Sensor, then a deputy U.S. marshal, arrested and booked Mr. Hebert on a warrant. *Id.* at 285. The record does not establish whether he read Mr. Hebert his *Miranda* rights. On direct examination, he testified:

> **Q:** At any point in your conversations or contact with the defendant that day, did he identify himself as a Native American?
>
> **A:** No.

*Id.*

*d.  Special Agent Paul Sparke*

Paul Sparke, an FBI special agent who investigated Mr. Hebert's case, testified that he contacted the five major Indian tribes in Oklahoma and did not receive any information indicating that Mr. Hebert was an Indian. *Id.* at 297, 302.

*e.  Driver's licenses*

The prosecution introduced Mr. Hebert's driver's licenses from Alabama and Florida.  Suppl. ROA.  Both listed Mr. Hebert's race as "W" for white.  *Id.*  Special Agent Sparke, who authenticated the exhibits, testified that he did not know whether a driver could choose more than one race or whether Native American was one of the available options in those states.  ROA, Vol. III at 301.

**3.  Rule 29 Motion**

After the prosecution rested, Mr. Hebert moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  Defense counsel argued:

> I would like to make a Rule 29 motion just to the sufficiency of the evidence, specifically the element of proving that Mr. Hebert is not a member of a recognized tribe.  There has been some testimony, I understand, that they made an effort, but there still is some doubt as to that.

*Id.* at 384.

The court denied the motion:

> Okay.  Thank you.  When the Court considers a motion for judgment of acquittal, it is, of course, obliged to evaluate and determine the evidence in the light most favorable to the government.  In doing so in this case, the Court finds that a reasonable jury could find each and every element of the charged crime beyond a reasonable doubt; therefore, the motion will be overruled.

8

> With regard to the Indian/non-Indian status, I think the government has put on sufficient evidence to get by a Rule 29 motion. It's a tough element, as you all know. I think it is. So we'll move on from there.

*Id.*

### 4. Jury Instructions

The district court instructed the jury that the elements of the charged crime included that "[the victim] is an Indian" and that "the defendant is a non-Indian." ROA, Vol. I at 170. The instructions did not include a definition of "Indian" or "non-Indian."

### 5. Jury Verdict and Sentence

Mr. Hebert was found guilty and sentenced to 30 years in prison followed by a lifetime of supervised release.

## II. DISCUSSION

On appeal, Mr. Hebert argues that (1) the prosecution introduced insufficient evidence to prove he was a non-Indian, (2) the district court plainly erred by failing to instruct the jury on what it means to be a non-Indian, and (3) the court also plainly erred by allowing the prosecution to elicit testimony and make arguments that penalized him for remaining silent about his Indian status. Because we conclude the evidence was insufficient on the essential element of non-Indian status, we do not address the second and third issues.

The following discussion addresses (A) whether Mr. Hebert has preserved his arguments that the evidence was insufficient to prove he was a non-Indian, (B) the standard of review for a sufficiency of the evidence challenge, (C) the sufficiency

requirements for non-Indian status, and (D) whether the Government presented sufficient evidence to prove Mr. Hebert was a non-Indian.

## A. *Preservation*

In its brief, the Government contends we must review Mr. Hebert's argument about the probative value of racial identity evidence for plain error because he did not raise it below. Aplee. Br. at 14. It also says Mr. Hebert did not argue below that the prosecution failed to prove he lacked Indian blood. *Id.* at 17. It further contends that "[t]he only preserved error" from the Rule 29 motion concerned tribal membership. *Id.* at 19. These arguments are unavailing.

## 1. Additional Legal Background

Our cases have sketched a framework to consider whether a defendant has preserved a sufficiency of the evidence argument on appeal.

First, a defendant preserves an appellate challenge to the sufficiency of the evidence by moving for judgment of acquittal under Federal Rule of Criminal Procedure 29. *See United States v. Murphy*, 100 F.4th 1184, 1192-93 (10th Cir. 2024). A Rule 29 motion contests whether a reasonable jury could find the offense elements beyond a reasonable doubt. It preserves the defendant's opportunity to raise specific sufficiency-of-the-evidence arguments on appeal even if those arguments were not specified in the Rule 29 motion.

Thus, "a generalized Rule 29 challenge to the . . . evidence," *United States v. Dermen*, 143 F.4th 1148, 1218 (10th Cir. 2025), enables the defendant to "build upon

broad arguments made before the district court" through "the articulation of specific theories" on appeal, *Murphy*, 100 F.4th at 1192, 1194.

Second, a defendant who presents specific arguments in a Rule 29 motion risks forfeiting those not raised. *Id.* at 1193; *see United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019). We therefore may review any sufficiency argument on appeal unless the defendant affirmatively caused the district court *not* to consider that argument. *See, e.g.*, *United States v. Maynard*, 984 F.3d 948, 961 (10th Cir. 2020) (challenging only one count forfeits challenge to other counts); *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (challenging only one element forfeits challenge to other elements).

Third, we must consider not only the Rule 29 motion but also the district court's response to the motion. If a "district court *sua sponte* raises and explicitly resolves an issue of law on the merits," a defendant "may challenge that ruling on appeal on the ground addressed by the district court." *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003); *see United States v. Lowe*, 117 F.4th 1253, 1268-69 (10th Cir. 2024).[5]

---

[5] Preservation ordinarily requires a litigant to present an argument "with sufficient clarity and specificity" so the district court may "consider and rule" on it and so the appellate court is "not resolving issues in the first instance." *Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 741 (10th Cir. 2015) (quotations omitted); *see Simpson v. Carpenter*, 912 F.3d 542, 565 (10th Cir. 2018). Although a Rule 29 motion alerts the court to a claim that the prosecution has not proved its case, *Murphy* and *Dermen* do not seem to require the specificity for preservation that may be required in other contexts.

## 2. Application

Mr. Hebert's sufficiency arguments were preserved. When his counsel moved for acquittal under Rule 29, she stated the evidence was insufficient to show "the element of proving that Mr. Hebert is not a member of a recognized tribe." ROA, Vol. III at 384. She argued there had been "some testimony" but that "there still is some doubt." *Id.*

As noted above, the district court denied the motion, stating the Government had "put on sufficient evidence to get by a Rule 29 motion" on the "tough element" of "Indian/non-Indian status." *Id.* It then went further and ruled that "a reasonable jury could find each and every element of the charged crime beyond a reasonable doubt." *Id.* Nothing suggests the district court limited its consideration of the motion to any specific sufficiency arguments.

Although defense counsel referred to "the element" being challenged as Mr. Hebert's lack of tribal membership, the court understood this reference as a shorthand for non-Indian status—it said there was sufficient evidence of the "tough element" of "Indian/non-Indian status." *Id.* And the court went beyond the grounds raised in the motion to assess the sufficiency of "each and every element," further demonstrating that it did not confine its ruling to any specific theory. *Id.*

Because the district court addressed the sufficiency of "each and every element," including the "tough element" of Indian status, we review Mr. Hebert's sufficiency arguments on appeal de novo, including those about racial identity and Indian blood. *See Dermen*, 143 F.4th at 1217-18; *Murphy*, 100 F.4th at 1192-95.

## B. *Sufficiency Standard of Review*

To convict a defendant, the prosecution must introduce sufficient evidence to "reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Otherwise, a defendant is entitled to a judgment of acquittal. *See* Fed. R. Crim. P. 29. We review the sufficiency of the evidence for a conviction de novo. *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013).

Under de novo review, we consider all of the evidence, *Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988), and construe it in the light most favorable to the prosecution, *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017). We respect that juries have "broad discretion" to "draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). But we do not "give the government the benefit of *every potential* inference but rather, only those inferences reasonably and logically flowing from the other evidence adduced at trial." *United States v. Santistevan*, 39 F.3d 250, 258 (10th Cir. 1994).

"An inference is unreasonable if it requires the jury 'to engage in a degree of speculation and conjecture that renders its findings a guess or mere possibility.'" *United States v. Goldesberry*, 128 F.4th 1183, 1192 (10th Cir. 2025) (quoting *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995)). We do not "uphold a conviction obtained by piling inference upon inference." *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999) (quotations omitted).

With these principles in mind, we must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quotations omitted); *see United States v. Spradley*, 146 F.4th 949, 963 (10th Cir. 2025). In doing so, "[a]n appellate court must consider the burden of proof in its sufficiency-of-the-evidence analysis. The test is not whether *some* evidence could have reasonably supported a guilty verdict, but whether a rational jury could have found each element of a crime beyond a reasonable doubt." *Rufai*, 732 F.3d at 1188; *see Jackson*, 443 U.S. at 319. We may affirm a conviction only if a jury "could reasonably conclude the defendant's guilt has been established 'with utmost certainty.'" *Goldesberry*, 128 F.4th at 1192 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

### C.  *Non-Indian Status and Sufficiency*

As noted above, the prosecution needed to prove (1) that Mr. Hebert has no Indian blood or (2) that neither a tribe nor the federal government recognizes him as an Indian. *Prentiss II*, 273 F.3d at 1280. The district court instructed the jury that the prosecution must prove he is "a non-Indian," ROA, Vol. I at 170, but it did not instruct on the "complex legal definition" of Indian status, *United States v. Romero*, 136 F.3d 1268, 1274 (10th Cir. 1998). Mr. Hebert contends that failing to do so was plain error.

Mr. Hebert argues the jury could not assess the non-Indian status requirements without knowing what they are. Although he may be correct, "a challenge to the sufficiency of the evidence . . . 'does not rest on how the jury was instructed.'" *United States v. Simpkins*, 90 F.4th 1312, 1315 (10th Cir. 2024) (quoting *Musacchio*,

14

577 U.S. at 243).  Courts analyze sufficiency by assuming a "*properly instructed*" jury.

*Id.* at 1316; *see United States v. Wyatt*, 964 F.3d 947, 951 (10th Cir. 2020).  "[W]hen

faced with a sufficiency challenge, a court asks only whether, after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found

*the essential elements of the crime* beyond a reasonable doubt."  *Simpkins*, 90 F.4th

at 1315 (quotations omitted); *see United States v. Kieffer*, 681 F.3d 1143, 1147 (10th Cir.

2012) (stating we must analyze "sufficiency challenges to [the] conviction based on the

evidence and the applicable law").

Thus, on the essential element that Mr. Hebert was not an Indian, we address

whether a rational jury, with full understanding of the *Prentiss II* Indian

blood/recognition test for Indian status, could have convicted him.

### D. *Sufficiency of the Evidence*

Despite the standard of review favoring the Government on appeal, we find the

evidence was insufficient for a rational jury to find Mr. Hebert was a non-Indian.

In reaching this conclusion, we recognize the Government's potentially difficult

task to prove a negative.  *See Elkins v. United States*, 364 U.S. 206, 218 (1960) (stating

that "as a practical matter it is never easy to prove a negative").[6]  This task is especially

---

[6] Courts have called the task impossible or near impossible.  *E.g., Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 103 (1st Cir. 1999); *Lamphere v. Brown Univ.*, 798 F.2d 532, 536 (1st Cir. 1986); *Llorente v. C.I.R.*, 649 F.2d 152, 156 (2d Cir. 1981); *Woods v. Butler*, 847 F.2d 1163, 1167 (5th Cir. 1988); *United States v. Fincher*, 929 F.3d 501, 506 (7th Cir. 2019); *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1204-05 (8th Cir. 1982); *United States v. Forbes*, 515 F.2d 676, 680 n.9 (D.C. Cir. 1975).  But it is "certainly not impossible" depending on the factual question.  *United States v. Woods*, 440 F.3d 255, 259 (5th Cir. 2006); *see United States v. Muhtorov*, 20 F.4th 558, 631

difficult when it must prove a negative beyond a reasonable doubt. *See Frigillana v. United States*, 307 F.2d 665, 667 (D.C. Cir. 1962) ("To prove a negative proposition beyond a reasonable doubt is in itself a very heavy burden."). And it is also particularly challenging when the information is more likely in possession of the defendant. *See United States v. N.Y., New Haven & Hartford R.R. Co.*, 355 U.S. 253, 256 n.5 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."); *United States v. Hester*, 719 F.2d 1041, 1043 (9th Cir. 1983) (recognizing that "the burden of producing evidence" in a § 1152 prosecution on whether a defendant is a non-Indian "is far more manageable for the defendant"). Finally, we have found no authority holding that an appellate court reviewing the sufficiency of evidence may water down the reasonable doubt standard because a particular fact is hard to prove.

To convict under § 1152, our precedent required the prosecution to prove that Mr. Hebert was not an Indian. *Prentiss I*, 256 F.3d at 980. It failed to do so beyond a reasonable doubt.

## 1.  Indian Blood

No rational jury could have found beyond a reasonable doubt that Mr. Hebert lacks Indian blood. The prosecution introduced no DNA or genealogical evidence to

---

(10th Cir. 2021) (despite the government's "extreme difficulty of proving a negative" that foreign intelligence surveillance produced no evidence, "we credit[ed] the detailed and credible assurances . . . made by a knowledgeable United States Attorney in charge of the investigation" (quotations omitted)).

16

show Mr. Hebert has no "Indian ancestors." *Diaz*, 679 F.3d at 1188. By contrast, in *Diaz*, the victim's father conducted extensive research into his and his wife's family history. *See id.* at 1187-88. That Mr. Hebert never mentioned "being an Indian" to Ms. Byers, ROA, Vol. III at 131, tells nothing about his ancestry. And although Mr. Hebert identified as part-Mexican, white, and Latino/Hispanic, that also does not show he has no Indian ancestors.

## 2. Recognition by a Tribe or the Federal Government

The evidence was also insufficient to prove that Mr. Hebert is not a recognized Indian. It is not enough for a jury to "determine that the defendant is *probably* guilty." *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993); *see United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475 (10th Cir. 1994). As the district court instructed in this case, the jury must be "firmly convinced." ROA, Vol. III at 159; *see United States v. Petty*, 856 F.3d 1306, 1309-10 (10th Cir. 2017).[7]

In its brief, the Government asserts it "presented one family member and three law enforcement officials to prove Defendant's non-Indian status." Aplee. Br. at 21. But the following discussion of the witness testimony shows it did not meet its burden.

---

[7] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. "[T]he interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." *Addington v. Texas*, 441 U.S. 418, 423 (1979). Thus, "the proof beyond a reasonable doubt standard implies that the party on whom that burden is imposed should bear almost the entire risk of error." *United States v. Schell*, 692 F.2d 672, 676 (10th Cir. 1982) (quotations omitted).

*a. Kara Byers's testimony*

Stepdaughter Kara Byers's threadbare testimony on the recognition element of Indian status fell far short of providing proof beyond a reasonable doubt.

Ms. Byers testified that she had never lived with Mr. Hebert except for the brief time leading to the offense. Although she had known him "a very long time" and he had helped her with bills and her children, the prosecution did not establish when they first met or how much time they had spent together. And although she talked "regularly" with Mr. Hebert around the time he moved into her house, the prosecution did not ask how often they talked, how long, or about what.

Having laid a thin foundation of how well Ms. Byers knew Mr. Hebert, the prosecution asked only three questions purportedly related to Indian status. First, when asked if Mr. Hebert is a tribal member, Ms. Byers said, "Not that I know of, no." ROA, Vol. III at 131. Second, when asked if he had mentioned being an Indian, she said, "No, never." *Id.* Third, when asked how Mr. Hebert identified as to race, she said, "One time, I think, part Mexican." *Id.*

Ms. Byers did not state that Mr. Hebert was not a tribal member, only "[n]ot that [she] know[s] of." *Id.* Similarly, the prosecution did not ask her whether Mr. Hebert was an Indian, only whether he had mentioned he was. And when asked about Mr. Hebert's race—a factor having little probative value—she equivocated—"I think, part Mexican."

Ms. Byers's answers show she was not aware whether Mr. Hebert was a member of or affiliated with a tribe. Perhaps her never hearing him mention being an Indian provides a bread crumb that he was not. But her equivocal testimony and the scant

18

evidence about their relationship does not support a reasonable inference that Ms. Byers actually knew Mr. Hebert's Indian status.

Ms. Byers's testimony was much weaker than the father's in *Diaz*.  679 F.3d at 1187.  The father was a closer relative to his son than Ms. Byers is to her stepfather. Unlike Ms. Byers, he had conducted extensive ancestral research.  Also unlike Ms. Byers, he specifically testified that his son was not a member of and did not otherwise affiliate with any tribe.  Ms. Byers said only that Mr. Hebert had not mentioned tribal membership or affiliations to her.  *See* ROA, Vol. III at 131.

The Government elicited only limited and superficial information from Ms. Byers about her relationship with Mr. Hebert.[8]  It also did not ask her whether or not he had received government assistance reserved for Indians, enjoyed the benefits of tribal affiliation, or lived on a reservation and participated in Indian social life—all factors relating to Indian recognition apart from tribal enrollment.  *See Nowlin*, 555 F. App'x at 823.

Given this paltry evidence, a jury would have to infer that Mr. Hebert was not an Indian because (1) Ms. Byers did not know if he was a tribal member, (2) he had not mentioned to her that he was an Indian, and (3) he once told her he is "part Mexican." The inference would be "so attenuated from underlying evidence as to cast doubt on the

---

[8] The argument section of the Government's brief contains only one sentence about Ms. Byers:  "The testimony of Kara Byers alone would satisfy the test based on her personal knowledge as a family member."  Aplee. Br. at 21.  But the prosecution presented minimal facts about her personal knowledge of Mr. Hebert.

trier of fact's ultimate conclusion." *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005). The "width of the gap," *id.*, between Ms. Byers's not hearing from Mr. Hebert that he was an Indian and an ultimate finding that Mr. Hebert was not an Indian would ask a rational jury "to cross the line from reasonable inference to mere speculation," *United States v. Harrison*, 103 F.3d 986, 991 (D.C. Cir. 1997).[9]

### b. *Investigators' testimony*

The investigators' testimony added little.

Investigator Grantham read Mr. Hebert his *Miranda* rights before interviewing him. He did not ask Mr. Hebert whether he was an Indian. At trial, he testified that Mr. Hebert failed to identify himself as an Indian. But Mr. Hebert's silence is "insolubly ambiguous" because it "may be nothing more than [his] exercise of these *Miranda* rights." *Doyle v. Ohio*, 426 U.S. 610, 617 (1976). And it would have been incriminating under § 1152 for him to say he was not an Indian and under § 1153 to say he was an Indian.

Agent Sensor arrested and booked Mr. Hebert. The record does not indicate whether he read him his *Miranda* rights. He did not ask whether Mr. Hebert was an Indian. At trial, he also testified that Mr. Hebert failed to identify himself as an Indian.

Investigator Grantham believed he contacted the five major Oklahoma tribes about Mr. Hebert's tribal status but was not sure. Special Agent Sparke said he contacted them

---

[9] A reasonable doubt "arises from the evidence or lack of evidence." *Johnson v. Louisiana*, 406 U.S. 356, 360 (1972). Here, the evidence was lacking.

and received no information suggesting Mr. Hebert was an Indian. Mr. Hebert moved to Oklahoma from Texas and had driver's licenses from Alabama and Florida, but the Government did not check on Mr. Hebert's Indian status in those other states.

Mr. Hebert told Investigator Grantham that he is Latino/Hispanic. His Alabama and Florida licenses listed him as white. The parties agree that racial identity is not the same as Indian status. The definition of a recognized Indian under *Prentiss II*—tribal or federal government recognition—does not turn on race. And even if relevant, the race evidence tells little because, as Investigator Grantham testified, someone can be both Hispanic and Native American.

The investigators' testimony did not show that any of them

- asked Mr. Hebert whether he was an Indian;

- pinned down Mr. Hebert's enrollment status with the five major Oklahoma tribes or any other tribes;[10]

- checked for any information in Texas, where Mr. Hebert had most recently lived, or in Alabama or Florida, where Mr. Hebert had obtained driver's licenses; or

- contacted a family member other than Ms. Byers to gather ancestry or recognition evidence.

---

[10] According to the Bureau of Indian Affairs, there are 37 federally recognized tribes in Oklahoma and 574 in the United States. *Tribal Leaders Directory*, U.S. Dep't of the Interior, Indian Affs., https://www.bia.gov/service/tribal-leaders-directory (last visited Nov. 17, 2025).

In *Diaz*, the panel said the prosecution had no duty "to bring forth tribal officials to *disprove* the victim was a member of their tribes" as that was "hardly realistic given the many tribes in New Mexico," due in part to "the father's testimony show[ing] he was not a member of a tribe." 679 F.3d at 1188. Here, unlike the father's testimony in *Diaz*, Ms. Byers's testimony proved little about Mr. Hebert's non-Indian status. And whether or not it was realistic to obtain tribal enrollment information, the Government's reliance on an investigator's merely contacting five tribes without results proved nothing.

21

Rather than enabling the jury to draw reasonable inferences of Indian status, the investigators' testimony left the jury "to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility." *Jones*, 44 F.3d at 865 (quotations omitted).

* * * *

In sum, the sparse evidence showed (1) Ms. Byers lived with Mr. Hebert only briefly and lacked awareness of his being a member of or affiliated with any tribe; (2) Mr. Hebert did not racially identify as an Indian; and (3) he did not spontaneously incriminate himself to law enforcement by stating whether he was an Indian—hardly enough to be "firmly convinced" that Mr. Hebert was not an Indian and far short of "substantial." *United States v. Erickson*, 561 F.3d 1150, 1158-59 (10th Cir. 2009) (stating "the evidence supporting the conviction must be substantial").

The evidence may permit a rational jury to make an educated guess, but not a finding "with utmost certainty" that Mr. Hebert was not an Indian. *Goldesberry*, 128 F.4th at 1192 (quoting *Winship*, 397 U.S. at 364).[11] "The test is not whether a rational jury could decide that guilt was more likely than not, but beyond a reasonable

---

[11] Even if common sense suggests Mr. Hebert was a non-Indian, "a real possibility" he was an Indian remains given the tenuous evidence. ROA, Vol. III at 159 (reasonable doubt instruction); *see United States v. Catano*, 65 F.3d 219, 228 (1st Cir. 1995) (noting the "distinction between common sense, as methodology, and the beyond-a-reasonable-doubt standard, as a quantum of proof").

doubt." *Rufai*, 732 F.3d at 1188.  The Government simply did not prove an essential element of its case.[12]

### III.  CONCLUSION

We vacate Mr. Hebert's conviction and remand to the district court to enter a judgment of acquittal.  *See United States v. Wheeler*, 776 F.3d 736, 741 (10th Cir. 2015) (concluding the government could not retry the defendant if the trial evidence had been insufficient to convict).[13]

---

[12] In its brief, the Government renews its longstanding opposition to the *Prentiss I* en banc decision imposing the burden of proving non-Indian status on the prosecution, arguing "[t]here are cases where proving a negative is problematic or impossible." Aplee. Br. at 20 n.5 (quotations omitted).  But we must apply binding precedent to the evidence, and we have.

We note that (1) apart from Indian status, no one contests that Mr. Hebert committed the offense; (2) he would be guilty under § 1152 as a non-Indian and under § 1153 as an Indian; (3) making the government prove the negative that he was not an Indian is difficult in this context; (4) two circuits allocate the burden of production on non-Indian status to the defendant, *see United States v. Haggerty*, 997 F.3d 292, 302 (5th Cir. 2021); *Hester*, 719 F.2d at 1043; and (5) the leading Indian law treatise favors that approach, Cohen's Handbook of Federal Indian Law § 11.02[1][b][iii] (Nell Jessup Newton & Kevin K. Washburn eds., 2024).

[13] Mr. Hebert may still be prosecuted in state or tribal court to the extent permitted by law.  *See, e.g.*, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 633 (2022) (holding that state and federal courts "have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country"); *see also Bartkus v. Illinois*, 359 U.S. 121, 138-39 (1959) (double jeopardy does not bar state prosecution following federal prosecution); *United States v. Wheeler*, 435 U.S. 313, 329-30 (1978) (double jeopardy does not bar tribal and federal prosecutions).

23

24-7030, *United States v. Hebert*

**HARTZ**, J., concurring

I concur fully in the opinion by Judge Matheson. I write separately only to urge this court to reconsider its view, stated in the en banc decision in *United States v. Prentiss*, 256 F.3d 971 (2001), that the non-Indian status of the defendant is an element of the offense charged under 18 U.S.C. § 1152. Under principles of common sense, statutory interpretation, and Indian law, non-Indian status should be an affirmative defense. As a result, Defendant Hebert should have to make a showing of his status as an Indian before the government has to rebut that proposition beyond a reasonable doubt.

I begin with common sense. The facts of this case illustrate the impracticality of requiring the government to prove the non-Indian status of an itinerant with no close personal ties. Who can the government find to establish that Defendant's complete family tree contains no Indian blood whatsoever and that he has no ties to a recognized tribe anywhere in this country? In contrast, if there were evidence of Defendant's Indian status, Defendant could easily point to it and do so without implicating in any way his culpability for the underlying crime.

The text of § 1152 supports this approach. The first paragraph of the section extends to Indian country the general laws of the United States that apply in places within its "sole and exclusive jurisdiction." The second paragraph provides exceptions to this general rule, stating that the proposition stated in the first paragraph "shall not extend" to, among other things, "offenses committed by one Indian against the person or property of another Indian." 18 U.S.C. § 1152. As the Supreme Court recently reaffirmed, "[W]hen a

statute has exemptions laid out apart from the prohibitions, and the exemptions expressly refer to the prohibited conduct as such, the exemptions ordinarily constitute affirmative defenses that are entirely the responsibility of the party raising them." *Cunningham v. Cornell University*, 145 S. Ct. 1020, 1027 (2025) (brackets and internal quotation marks omitted). To be sure, *Cunningham* dealt with a civil statute. But its logic extends to the criminal context. *See id.* at 1031. ("Even in the criminal context, it remains a settled rule that an indictment or other pleading need not negative the matter of an exception made by a proviso or other distinct clause." (ellipsis and internal quotation marks omitted)); *McKelvey v. United States*, 260 U.S. 353, 357 (1922) ("By repeated decisions it has come to be a settled rule . . . that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it."); *United States v. Haggerty*, 997 F.3d 292, 300 (5th Cir. 2021) ("Section 1152 appears to be the exact type of statute contemplated by the Supreme Court [in *McKelvey*]. It has two distinct clauses, the first of which generally extends the scope of all federal enclave laws to include Indian country. The second clause, set out from the first, describes three exceptions to the general definition set forth in the first clause."). The sole deviation from the general rule in the criminal context is that the government generally bears the ultimate burden of overcoming an affirmative defense beyond a reasonable doubt. *See, e.g.*, *United States v. Unser*, 165 F.3d 755, 764 (10th Cir. 1999) ("[W]hen evidence has been produced of a defense which, if accepted by the trier of fact,

2

would negate an element of the offense, the government must bear the ultimate burden of persuasion on that element, including disproving the defense.").

I recognize that Indian law is unique in many ways. General principles often fail in that context. But that is emphatically not the situation here. Judge William C. Canby Jr., the author of the highly influential *Indian Law in a Nutshell*, wrote the leading decision by a federal court of appeals holding that "the Government need not allege the non-Indian status of the defendant in an indictment under section 1152, nor does it have the burden of going forward on that issue." *United States v. Hester*, 719 F.2d 1041, 1043 (9th Cir. 1983). He explained: "It is far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes." *Id. Accord Haggerty*, 997 F.3d at 297–302. And the most recent edition of the giant in the field, *Cohen's Handbook of Federal Indian Law*, takes the same view:

> In light of the federal responsibility to ensure public safety on Indian reservations, it is sensible to require the government to allege and prove the Indian status of either the victim or the defendant to justify the federal interest in the case. But non-Indian status does not further the federal interest and need only be addressed if relevant. For example, *it is sensible to require the defendant to invoke the exception to [§ 1152] for Indian-versus-Indian offenses. Moreover, the defendant can raise the issue by presenting some evidence of membership in a federally recognized Indian tribe or other recognition as an Indian.*
>
> In a nation with well over 570 federally recognized Indian tribal nations, however, *it would be difficult to require the government to prove that the defendant is not a member of any of them, absent some evidence that the question is contested by the defendant.*

*Cohen's Handbook* § 11.02[1][b][iii] (Nell Jessup Newton & Kevin K. Washburn, eds., 2024) (emphasis added).

3

This court took an unfortunate misstep in *Prentiss*, and we should correct it.

Finally, one other comment. We properly hold in this case that Mr. Hebert preserved his challenge to the sufficiency of the evidence. But that holding is limited to the specific context of a challenge to the sufficiency of the evidence of guilt. Ordinarily, a principal reason for requiring preservation is to enable the court or the opposing party to cure an error before any appellate review. That is less important in this context. Indeed, Fed. R. Crim. P. 29(c)(1) permits a defendant to move for judgment of acquittal even after the jury has been discharged, when it is too late to permit the prosecution to reopen the evidence. *Compare* Fed. R. Civ. P. 50(a), (b).

4